GEORGE E. SEBRING COMPANY, *Appellant,* v. MARY E. SKINNER, joined by her husband, L. B. SKINNER, *Appellees.*

Division A.

Opinion filed July 28, 1930.

316

*Haskins, Gregory & Gordon,* for Appellant;

*McKay, Withers & Ramsey,* for Appellees.

ELLIS, J.—This suit is one to enforce a mortgage lien. The defense sought to be interposed is that the holder of the notes evidencing the debt and the mortgage which was given to secure it is not a holder in due course for a valuable consideration and therefore the notes are held subject to the equities existing between the maker and original payee. That proposition may be considered as settled. See Sumter County Bank v. Hays, 68 Fla. 473, 67 So. R. 109; Prescott v. Johnson, 8 Fla. 391; Sec. 4731, Rev. Gen. Stats., 1920 (Sec. 6817, Comp. Gen. Laws, 1927); Livingston v. Roberts, 18 Fla. 70; 3 R. C. L. 1032; 8 C. J. 464 and authorities cited.

One must be, or the person through whom he claims must be, a holder of the note in good faith for value before maturity in the usual and ordinary course of business and without notice of dishonor or fraud, defect of title, illegality or other defense that would defeat recovery between the antecedent parties; to be able to enforce it against the defenses available to the maker against the payee. 8 C. J., p. 480.

An assignment made with a view to cutting off defenses of the maker or the drawer will not constitute the assignee a bona fide holder. Cooper v. Nock, 27 Ill. 301.

A consideration is necessary and it must be sufficient to support a simple contract. See Elgin City Banking Co. v. Hall, 119 Tenn. 548, 108 So. W. R. 1068.

Mary E. Skinner, joined by her husband, L. B. Skinner, began her suit to foreclose a mortgage executed by George E. Sebring Company, a Florida corporation, to secure the payment of three promissory notes each in the sum of $13,206.25, dated September 28, 1925, and payable to R. E. Skinner or order, one, two and three years after date respectively. The security was a real estate mortgage. The bill alleges that R. E. Skinner on June 8, 1926, endorsed the notes to Mary E. Skinner and assigned the mortgage to her. The bill alleges that in February, 1926, the Sebring Company conveyed the lands mortgaged to Bratton Realty Company; a corporation; that several other corporations, the Highlands Hardware Company, Jackson Heights Corporation, Townsend Sash, Door & Lumber Company, a corporation, and Tom Mitchell, doing business as the Mitchell Electric Company, each claims liens upon the property and they are made defendants to the bill. The allegation is made that their claims are inferior to the lien of the complainants.

The bill contains the prayers that are usual in such cases.

Under a stipulation between the parties, the Sebring Company caused to be filed its amended separate answer in which it also set up by way of affirmative relief a condition affecting the bona fides of the complainant as a holder in due course of the notes and the equitable defense of the maker of them as against the payee which also constitutes the basis of the relief which it seeks.

The defense is set up, in our view, by an unnecessary amount of words, covering approximately twenty-three pages of typewritten matter, in which the pleader seem-

ingly endeavored to express with the highest degree of certainty every evidential fact in particular contributing to the defense and he did so with such meticulous verbal care that the merits of the defense are almost obscured by the multiplicity of words and repetitions.

Solicitors for the complainant moved to strike portions of the answer. There are twenty-three grounds, many of which are general. Those which are specific attack the portion of the answer sought to be stricken, because the defendant has parted with the title to the property mortgaged; that the defendant's remedy is at law; that the alleged misrepresentations made by the complainant were matters of opinion and equally open to inspection by all parties; that the defendant did not rely upon such representations; that it is not averred that failure to consummate sales of land were in any manner caused by the failure to execute the release agreement mentioned in the answer or by any false representations averred therein.

After the motion was made, the court permitted the defendant to amend the amended answer by averring the insolvency of R. E. Skinner and that the defendant was ready, willing and able to abide any order or decree of the court, including any order or decree for reconveyance of the property either in part or in whole.

The motion to strike was granted, from which order the Sebring Company took an appeal.

If pleadings in a cause in equity of the type formed by the answer are to receive any consideration at all it seems to the Court that they cannot be measured by isolated portions of it to determine their efficacy for any purpose but should be read and considered in their entirety and each part evalued according to its relation intimate or remote, direct or indirect, to every other part and an effort should be made to glean from the whole the defense sought to be

interposed. The virtue of a pleading does not consist in its multiloquence but in the ultimate facts which constitute the case on which the demand or the defense rests. Pleadings are not a war of words and while they should be certain and succinct they may often be crippled and their efficacy greatly impaired if not wholly destroyed by an overzealous effort to write with grammatical exactness into them every unimportant detail and collateral circumstance which might have a bearing upon the defense.

A study of the answer in its present form reveals in substance that the Sebring Company purchased the lands from R. E. Skinner who was joint owner with P. G. Caravasios; that by the contract of purchase Skinner agreed that the mortgage to be given to secure part of the purchase money should contain a release clause providing for the release of portions of the land upon the payment of certain sums of money. Caravasios refused to sign the contract because Skinner had sold the property for less than Caravasios had authorized. It was then agreed that separate deeds should be taken from Caravasios and Skinner and mortgages executed to each of them to secure the deferred payments on each parcel, Skinner accepting a smaller price for his undivided half interest. That the closing of the transaction, the preparation of the notes and mortgage was left to Skinner, an officer of the Company, and an attorney at law who was unfamiliar with the details of the transaction and merely followed Skinner's instructions, who presented the papers at defendant's office for execution. That the officer of the defendant Company accepting Skinner's statement that the mortgage was prepared in accordance with the terms of their agreement executed it. That subsequently the defendant discovered that the release clause was omitted from the mortgage. In purchasing the land

the defendant was acting for others and Skinner had knowledge of the fact. Those for whom defendant acted were then preparing to organize a corporation to be known as the Bratton Realty Company which was later completed. That later the defendant applied to Skinner for a supplemental release agreement to be made in accordance with the terms of the contract but he refused to execute it. Through Skinner's failure to comply with his agreement constituting the basis of the transaction the defendant became unable to make one or more advantageous sales of the property which resulted in financial injury to the defendant as a stock holder in the Bratton Realty Company.

The answer also contains a defense based upon false representations by Skinner as to the character of land which he represented was suitable for defendant's purpose which was known to Skinner and that the representation consisted in stating that the land was high and dry, suitable for dwellings and with good drainage conditions; that it was difficult for the defendant to make a personal inspection of the land a part of which only was examined and that Skinner knowing the representative capacity in which the defendant acted and its inability through its purchasing officer to make a thorough examination made the representations as to the character of the land which are averred to be false and fraudulent and made for the purpose of deceiving the defendant who was deceived by them; that the lands were in fact less valuable than they would have been had they been of the character which Skinner represented them to be and that such misrepresentations had occasioned the defendant and the persons for whom it acted great monetary loss.

That defense, if it is a valid defense, is available against the complainant because the answer avers that she is not

a bona fide holder of the notes for value but is party to the transaction merely to assist R. E. Skinner, the real owner of the notes, to avoid his contractual obligations with the defendant and avoid the consequences of his alleged fraud and deception in the transaction.

Neither defense set up in the answer was valid. That Skinner was bound by his contract with the defendant to write into the mortgage the release clause which he had agreed to incorporate in it is true. The mortgage was prepared by him and his attorney after consulting with defendant's agent and afterwards submitted to the Company's executive officer with the statement that it contained all the provisions agreed upon. That statement it is averred was untrue, but it seems to us that the circumstances averred in the answer in connection with this transaction were not such as to excuse the defendant through its officer from guarding the Company's interest by merely reading the paper and checking its provisions. The officer of the defendant Company notwithstanding his excuse that he was busy was not relieved from the duty of protecting his Company's interest. And the averments of the answer are not so clear as to Skinner's false statements and fraudulent purposes in this behalf as to create in the other that state of confidence and repose as to render the doing of an ordinarily prudent thing seemingly unnecessary.

While it is true that one cannot by a false representation induce carelessness upon another's part in the matter of signing papers and then profit by such negligence, the policy of the law is that he who will not reasonably guard his own interest when he has reasonable opportunity to do so and there is no circumstance reasonably calculated to deter him from improving such opportunity must take the consequences.

Where there is such inattention amounting to gross carelessness on the one side and misstatement upon the other and but for the former the latter would not be effective and loss occurs to the inexcusably negligent one he is remediless. "Not because the wrongdoer can plead his own wrongdoing as an excuse for not making reparation but first, because the consequences are attributable to inexcusable inattention of the injured party and second, because the court will not protect those who with full opportunity to do so will not protect themselves." See Standard Mfg. Co. v. Slot, 121 Wis. 14, 98 N. W. R. 923, 105 Am. St. R. 1016; Parker v. Parrish, 18 Ga. App. 258, 89 So. E. R. 381.

The principle was announced by this court in Glass v. Craig, 83 Fla. 408, text 418, 91 So. R. 332.

The point is made that Skinner's representations that the mortgage contained the clauses provided for by the contract were representations of a fact peculiarly within his own knowledge and that his refusal to execute a supplemental release after the omission to include it in the mortgage was in legal effect a fraud from which equity would relieve the mortgagor.

The circumstances as averred in the answer do not justify the averment that the fact was peculiarly within Skinner's knowledge. The mortgage was before the defendant when it was executed, it was charged through its officers with knowledge of its contents as well as the terms of the contract of sale; besides it is averred that an officer of the Corporation and Skinner caused the deed and mortgage to be prepared both being prepared "at the instance of said officer of this Corporation and the said Skinner through joint instructions to the attorney preparing the same."

We do not deem the circumstances of the execution of the mortgage as they are averred in the answer as a

basis for affirmative relief sufficient to excuse the defendant from availing itself of the opportunity afforded it to ascertain if its terms accorded with those of the contract for the sale which became merged in the final writings in which the agreement reposed.

Nor do we think the averments as to the alleged false representations concerning the character of land sufficient to entitle the defendant to a rescission of the contract or the affirmative relief sought.

It is averred that the officer of the defendant corporation "had examined but a portion of the lands which was subsequently purchased". The explanation given for not examining the subject matter of the trade is that it "was very difficult to make a personal inspection of the said premises and for such reason only a portion of the lands were actually examined by such officer of this defendant". What constituted the difficulty of such an inspection is not averred. A representative of the Company was upon the ground examining part of the premises. It is definitely averred that a completion of such inspection was not made because to do so was very difficult but the nature of the difficulty and what occasioned it is not averred nor may it be reasonably inferred from any averment made. It is not alleged that the lands were inaccessible to the defendant or any of its officers nor that an opportunity for observation was denied to any of its representatives or that they were for any reason further than it was very difficult to do precluded from making the inspection.

The averred deception by skinner consists in an expression by him of his opinion that the lands were suitable for the purpose for which they were purchased after being being informed by defendant's agent what that purpose was.

The principle announced in the case of Glass v. Craig, *supra,* and reaffirmed in Stokes v. Victory Land Co., 99 Fla. 795, 128 So. R. 408, is that the misrepresentation to be ground for rescission must be in reference to some material thing unknown to the complainant, either from his not having examined or for want of opportunity to be informed or from his entire confidence reposed in the defendant and such confidence should be a right growing out of the relations of the parties of a fiduciary character.

In Stephens v. Orman, 10 Fla. 9, this Court held that even where there exists a basis for the allegation that one has been deceived by the misrepresentations of another his remedy must be pursued in good time after the injury is discovered. See Hirschman v. Hodges, 59 Fla. 517, 51 So. R. 550.

The language used in the latter case is peculiarly applicable here, slightly paraphrased. The corporation was given the opportunity to examine thoroughly every acre of the land. It was not prevented in any way from calling in the aid of any other person whom it might desire. The company may have acted imprudently but applying the facts as they are averred in the answer we are unable to discover any basis for the complainant that a fraud was perpetrated by the mortgagee or seller of the land upon the company. Nothing but what is plainly injurious to good faith ought to be considered as a fraud sufficient to impeach a contract. See also International Realty Assn. v. McAdoo, 87 Fla. 1, 99 So. R. 117.

There exists no averment of fact from which it may be even inferred that the defendant corporation was "designedly lulled into a sense of security by the fraudulently concealed wiles of the vendor" or that the defendant could not conveniently make such investigation of the property

by reason of its inaccessibility. 2 Pomeroy's Eq. Jurisprudence (4 Ed.) Secs. 891-894.

That an examination of the property was "very difficult" is perfectly consistent with the idea that the property was accessible, an examination feasible and that opportunity for investigation existed, but for any number of insufficient reasons such as other business demands, scarcity of help in the office, absence of a particular official or inclemency of the weather it was deemed to be very difficult.

There exists no basis in the answer for a set off against the debt on account of the averred facts which are claimed to be grounds for a rescission of the contract.

The order of the chancellor sustaining the motion to strike portions of the amended answer as amended is affirmed. The cause is remanded with instruction to strike all of that part of the answer beginning with paragraph (a) down to and including paragraph (u) with leave to amend if it so desires.

Affirmed.

TERRELL, C. J., AND BROWN, J., concur.

WHITFIELD, P. J., AND STRUM AND BUFORD, J. J., concur in the opinion and judgment.